UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Christopher James Bailey,

    Plaintiff,

v.

Scoutware, LLC,

    Defendant.
                                          /

Case No. 12-10281

Honorable Nancy G. Edmunds

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SHOW CAUSE [93]

In this Michigan Whistleblower Protection Act and breach of contract case, Plaintiff Christopher Bailey alleges that Defendant Scoutware terminated him and breached its contract with him when it found out about a suit Plaintiff filed against his former employer, Fast Model.[1]

On July 31, 2013, the Court denied Defendant's motion for summary judgment on the WPA claim. (Dkt. 83.) The Court found that, viewing the evidence in a light most favorable to Plaintiff, that he had brought forth evidence to show that Defendant's termination was, at least in part, based on the Fast Model suit. (*Id.*)

Throughout the case's progress, Plaintiff and Defendant have disputed the discovery of several text messages that occurred between a Fast Model employee, Ross Comerford,

---

[1] In his Fast Model suit, Plaintiff alleged that his former employer Fast Model violated the Michigan Sales Representative Commissions Act, Michigan's procuring cause doctrine for post-termination commissions, promissory estoppel, breach of contract and quantum meruit, tortious interference against Fast Model and Ross Comerford, an employee, and intentional infliction of emotional distress against Fast Model and Ross Comerford. (Dkt. 12, Pl.'s Resp. to Defs.' Mot. to Dismiss, Ex. 3.)

and Kate Cronin, Plaintiff's co-worker and mentor at Defendant. These text messages occurred a day or two after Plaintiff's Fast Model deposition, in which he turned over his Scoutware contract and Fast Model first learned that Defendant was then employing Plaintiff. Defendant has not produced the text messages, stating that it cannot recover the text messages. During the hearing on the motion for summary judgment, on July 24, 2013, Defendant revealed that it had an expert examine Cronin's phone and that the expert could not recover the text messages or any voice messages on Cronin's phone.

**I.      Introduction**

Over four months later, on December 14, 2013, Plaintiff filed this motion for show cause. (Dkt. 93.) Plaintiff argues that (1) Defendant violated the Court-ordered consent order, (2) Defendant gave false and misleading discovery responses that Cronin's phone was in the possession of a third party, (3) the Court should bar Defendant from arguing that it did not know of Plaintiff's protected activity or the Court should force Defendant to turn over the evidence that goes to the defense and/or liability as a result of its concealment, and (4) the Court should hold Defendant's counsel in contempt and order them to pay Plaintiff's attorneys's fees for filing this motion. (Pl.'s Mot. at 3.)

Plaintiff suggests that the Court: (1) bar Defendant from arguing that it did not know of Plaintiff's lawsuit against Fast Model or that it did not know the specifics of that lawsuit; (2) give the jury an instruction that Defendant withheld the alleged forensic examination and gave false discovery responses because the information was damaging to their defense;

2

and (3) force Defendant to turn over phones and information relating to expert analysis.[2] (Pl.'s Mot. at 11-13.)

Plaintiff also suggests that the Court order Defendant to pay Plaintiff's attorneys's fees for this motion and any other sanctions the Court finds proper to deter actions such as Defendant's. (Pl.'s Mot. at 13-14.)

## II. Analysis

The Court held a hearing on this matter on March 19, 2014. While the Court denies the majority of the relief Plaintiff requests, the Court finds that Plaintiff is entitled to examine Kate Cronin's past and present phone.

### A. The parties' arguments

Plaintiff states that Defendant violated the discovery order that the magistrate judge entered on February 11, 2013. (Pl.'s Mot. at 5.)

---

[2]Rule 37(b) governs sanctions for a party that disobeys or violates a discovery order. Fed.R.Civ.P. 37(b)(2)(A). The Rule contemplates the following:

    (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the actions, as the prevailing party claims;
    (ii)   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
. . .
    (iv)   staying further proceedings until the order is obeyed;
. . .
    (vii)  rendering a default judgment against the disobedient party[.]

Rule 37(c) governs the failure to disclose or supplement responses and provides for similar sanctions. Fed.R.Civ.P. 37(c). Rule 37(d), in relevant part, governs the failure to respond to a request for inspection, and also provides for the sanctions as set for in Rule 37(c). Fed.R.Civ.P. 37(d)

That stipulated discovery order provided, in part, that Defendant would produce the text messages between Cronin and Comerford that Plaintiff identified in its requests for production of documents. (Pl.'s Mot., Ex. 1.) The order also addressed the subpoena to Cronin and required Defendant to comply with the subpoena seeking the text messages from Cronin's phone. (*Id.*, Ex. 2.) On February 15, 2013, Defendant submitted an "affidavit of completeness." (Pl.'s Mot., Ex. 3.) In the affidavit, Defendant attests that it has complied with the February 11, 2013 discovery order and has no more documents that are responsive to the order that Plaintiff is entitled to. (*Id.*)

Plaintiff also objects to Defendant's response to a request to produce. (Pl.'s Mot. at 6-7.) Plaintiff requested that Defendant "[p]roduce all voicemails left by Ross Comerford to Kate Cronin from October 18, 2011 through the present day." (Pl.'s Mot., Ex. 4.) Defendant responded,

> Scoutware objects to this request because it seeks information and/or documents not in the possession, custody, or control of Scoutware, but int eh possession, custody or control of third parties. Subject to, and without waiver of its objections, Scoutware states that it has no responsive document or items within its possession, custody or control.

(*Id.*)

Plaintiff objects to Defendant's characterizing Cronin as a "third-party." (Pl.'s Mot. at 7.) Plaintiff states that she "cannot be considered a third party if [Defendant] [has] the authority to ensure she complies with a subpoena and turn over every other piece of evidence that was requested from her." (*Id.*)

Plaintiff emphasizes that the five missing text messages and two voice messages are the only recorded pieces of evidence pertaining to conversations between Comerford and Cronin during Plaintiff's employment with Defendant. (Pl.'s Mot. at 7.) Plaintiff postures

4

that Defendant was able to turn over dozens of other text messages between Cronin and Comerford, but that Defendant was not able to produce the messages in question. (*Id.*) Plaintiff suggests that the reason that Defendant did not produce and cannot produce them is that the message were damaging to the case "and [Defendant has] either destroyed them or knowingly refused to turn them over." (*Id.*)

Plaintiff further objects to the fact that Cronin still has the phone in her possession. (Pl.'s Mot. at 7-8.) Plaintiff argues that there is no reason that she should not be able to turn over the phone so that an expert can retrieve the messages. (*Id.*)

Plaintiff argues that Defendant's failure to turn over the expert's forensic report violates the Court's order. (Pl.'s Mot. at 8.) Plaintiff maintains that the fact that Defendant had possession of Cronin's phone at one time despite stating that it could not produce the phone because it was in a third party's possession. (*Id.*) Plaintiff questions when the expert examined the phone and why the phone was not turned over to Plaintiff. (*Id.*)

Plaintiff further argues that the phone possibly had evidence on it since Plaintiff had been seeking it since "day one of this case." (Pl.'s Mot. at 8.) Plaintiff maintains that the expert evaluation "would obviously contain information such as when the information was lost from the phone, whether it was intentionally deleted, whether the phone was altered, and other relevant evidence. (*Id.*) Plaintiff then maintains that, if the evidence was tampered with, then the jury would be able to hear that fact and draw conclusions from it. (*Id.*) Plaintiff states that Defendant has no right to turn over relevant evidence just because Defendant does not plan to call the expert at trial. (*Id.*) Plaintiff additionally states that Defendant's expert is the only person who has examined Cronin's phone and only person

5

who would have information as to whether the messages were still on the phone, and when the phone was supposedly lost. (*Id.* at 8-9.)

Plaintiff suggests that it has the right to have his own expert evaluate the evidence. (Pl.'s Resp. at 9.)

Defendant responds that it did not violate the discovery order. (Def.'s Resp. at 2.) It argues that it has produced "every responsive text message it was able to retrieve from [] Cronin's phone." (*Id.*) Defendant represents that Cronin and Defendant's counsel searched through Cronin's phone and was not able to find the messages that Plaintiff sought. (*Id.* at 3.) Defendant also represents that it "took the additional measure" of hiring a consulting expert to examine the phone to see if any of the text messages that Plaintiff sought could be retrieved. (*Id.*) Defendant states that even its consultant could not retrieve the messages. (*Id.*) Defendant has attached the declaration of Josh Fazio, the consulting expert who reviewed Cronin's phone. (*Id.* at 4, Ex. B.) The consulting expert also stated that "[t]here is no way to tell from the phone whether any such messages ever existed or, if so, what happened to them." (*Id.*)

Defendant also argues that the Court should deny Plaintiff's motion for show cause because the motion is untimely. (Def.'s Resp. at 7.) Defendant states that Plaintiff filed this motion nine months after the end of discovery; seven months after the Court's order denying Plaintiff's request to extend discovery, and more than four months after the Court's ruling on summary judgment. (*Id.*) Defendant stresses that the motion is also untimely because it has come three-and-a-half months after Defendant reached out to Plaintiff and attempted to resolve the phone issue. (*Id.*)

6

Defendant further argues that the Court should deny the motion because Plaintiff failed to seek concurrence in accordance with Eastern District of Michigan Local Rule 7.1(a). (Def.'s Resp. at 8.)

Defendant asks the Court to order Plaintiff to pay Defendant's costs in responding to the motion. (Def.'s Resp. at 10.)

### B. The Court grants in part and denies in part Plaintiff's motion, but there is no basis from which to hold Defendant in contempt of Court or award sanctions

The Court finds no basis from which to find that it should hold Defendant in contempt of court or that Defendant violated the discovery order. The Court does find, though, that Plaintiff is entitled to have his expert review Kate Cronin's current and old cell phone.

"To hold a litigant in contempt, the movant must produce clear and convincing evidence to show a violation of a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Satyam Computer Servs., Ltd., Ltd. v. Venture Global Eng'g, LLC*, 323 F.App'x 421, 433 (6th Cir. 2009) (citations omitted). "Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order." *Id.* (citation omitted, emphasis in original.).

There is no clear and convincing evidence that Defendant acted improperly. To the contrary, the Court finds that Defendant acted to accommodate Plaintiff's discovery request.

After Plaintiff filed his motion to show cause, Defendant reached out to Plaintiff to resolve the issues Plaintiff raised in his motion. On January 10, 2014, Defendant

responded to an email Plaintiff sent. (Def.'s Resp., Ex. C.) In the letter, Defendant proposed a means to resolve their dispute over Cronin's phone and the alleged missing texts. (*Id.*)

Defendant stated that it was addressing Plaintiff's two concerns: (1) Plaintiff's desire to obtain the information concerning Defendant's consulting expert retained to examine Cronin's cell phone, and (2) Plaintiff's desire to have his own expert examine Cronin's cell phone. (Def.'s Resp., Ex. C.)

Addressing Plaintiff's first concern, Defendant represented that the individual that it retained was a consulting expert and it never intended the expert to testify at trial. (Def.'s Resp., Ex. C.) Defendant then informed Plaintiff, because it did not intend on calling the expert at trial, that Plaintiff was not entitled to the information that he sought. (*Id.*)

Defendant then offered Plaintiff some of the information he requested. (Def.'s Resp., Ex. C.) Defendant stated that it retained a forensic investigator who was trained to recover electronically stored information from cell phones. (*Id.*) Defendant explained that the expert looked for texts or Short Message Service (SMS) messages associated with Ross Comerford that were sent and/or received at any time prior to December 5, 2011. (*Id.*) Defendant maintained that the "forensics examination uncovered no such messages and the investigator uncovered no such messages and the investigator advised [Defendant] that there was no way to tell whether such messages ever existed or if so, what happened to them." (*Id.*)

Defendant urged to Plaintiff that it took the "extraordinary step of retaining an expert to see if it was somehow possible to recover those text messages." (Def.'s Resp., Ex. C.) Defendant offered to allow Plaintiff to review the forensic report, so long as Plaintiff

permitted Defendant to continue to designate the expert as a non-testifying consulting expert. (*Id.*) And Defendant requested that Plaintiff not view the offer as a waiver of Defendant's position that the consultant was a non-testifying expert.

Defendant then addressed Plaintiff's request to examine Cronin's phone. (Def.'s Resp., Ex. C.) Defendant stated that Plaintiff's motion to show cause solely addressed the missing texts and two voicemails. (*Id.*) Defendant represented that it did not know which two voicemails that Plaintiff was referencing. (*Id.*)

Defendant then proposed a way to settle their dispute over Cronin's phone. (Def.'s Resp., Ex. C) Defendant offered the following:

- to ship the phone directly to Peter Morgen, an expert, for Morgen's examination of the phone;
- limits on Morgen's search of the phone--that Morgen would not examine, look at, copy, download, transfer, or save in any manner any text message or communication that could be classified as attorney-client privilege;
- limits on the dates of Morgen's search, between June 1, 2011, through the time Cronin stopped using the phone, possibly around February 5, 2012; and
- limits on the topics that Plaintiff's expert could search about, specifically, the three topics Plaintiff requested in his December 26, 2013 email.

(*Id.*) Defendant then suggested a procedure for returning the phone and information. (*Id.*) Defendant suggested that, once Morgen finishes examining the phone:

- he is to ship the phone back to Defendant, along with a copy of all of the documents he gathered from Cronin's phone;

- he is not to send any documents to Plaintiff until Defendant has cleared the documents, although the expert is able to keep copies of the documents and make a log of the documents that he shared with Defendant;

- Defendant will then prepare a log identifying all the dates and times of any text message and the originating phone number;

- in addition to the log, Defendant stated that it would then review the documents for privileged material and then would search the documents for materials relevant to Plaintiff's request;

- Defendant stated that it would produce the material within seven days;

- Defendant provided for any disputes of withholding documents by stating that the parties could confer with Plaintiff's expert if there were any disputes about the documents; and

- Defendant provided for an exception--if Plaintiff's expert found any of the five missing text messages, or any of the two missing voice mail messages allegedly left by Comerford, Plaintiff's expert may immediately forward those messages to Plaintiff so long as he also forwards those messages to Defendant.

(*Id.*)

On January 21, 2012, Plaintiff's counsel responded to Defendant's offer. Plaintiff's counsel stated,

> I received your letter and that is no proposal. Either comply with my terms or we let the judge decide. We will consent to no motion for reconsideration.

(Def.'s Resp., Ex. D.)

Defendant responded to this email. (Def.'s Resp., Ex. D.) Defendant clarified its offer, and stated that it did not condition its offer on Plaintiff's acceptance or rejection of any motion for reconsideration. (*Id.*) Defendant then reiterated the main points of its offer. (*Id.*)

The Court does not understand why Plaintiff objected to the offer, at least as a starting off point. The offer allowed Plaintiff to attempt to get the information he wanted--the missing texts, by his own means. The Court acknowledges the intrusion into Cronin's life that the analysis of her phone would cause. Defendant, with its offer, appears to take into account that intrusion. The Court finds that Plaintiff acted unreasonably in rejecting this offer in the manner in which he rejected it.

Plaintiff argues that the Federal Rules of Civil Procedure required Defendant to disclose that it had an expert examine the phone.[3] Defendant counters that it did not have to disclose the expert.

Rule 26(b)(4)(D) governs disclosure of an expert in anticipation trial, whom a party does not plan to call as a witness. The Rule provides:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only: . . . (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

---

[3] Rule 26(a)(1)(A) requires parties to disclose the name and other information of those who are likely to have discoverable information, along with the subjects of that information--"that the disclosing party may use to support its claims or defenses[.]" Fed.R.Civ.P. 26(a)(1)(A)(i). Rule 26(a)(2): "In addition to the disclosure required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."

Fed.R.Civ.P. 26(b)(4)(D). This section governs Plaintiff's request for the information from Defendant's expert.

The Court does note, though, that Plaintiff requested and has requested the ability to have an expert examine Cronin's cell phone for the text messages and the voice messages. The Court finds that, if Defendant had the cell phone in its possession and was able to examine it with an expert, that Plaintiff also should have the ability to examine the phone. The Court recognizes the possible significance of those messages.

The Court finds the following solution equitable: The Court orders that, within 21 days of this order, Defendant is to produce Cronin's current and old cell phone to Plaintiff's expert. Plaintiff's expert is to follow the guidelines as Defendant set forth in its offer to Plaintiff, except for one alteration. Plaintiff's expert may immediately forward any of the subject text or voice messages to Plaintiff and Defendant, but the expert may also forward immediately any information, if available, when the texts or voice messages were deleted. The Court orders the parties to examine the phones as quickly as possible and avoid intrusion and inconvenience to Kate Cronin.

As for Plaintiff's other requests that the Court: (1) bar Defendant from arguing that it did not know of Plaintiff's lawsuit against Fast Model or that it did not know the specifics of that lawsuit; and (2) give the jury an instruction that Defendant withheld the alleged forensic examination and gave false discovery responses because the information was damaging to their defense, the Court denies these requests. The Court finds these requests too severe and premature at the present juncture.

As for both parties' request for attorneys' fees, the Court finds that neither party's actions entitle them to such an award.

### III. Conclusion

For the above-stated reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion to show cause and request for sanctions.

So ordered.

> s/Nancy G. Edmunds
> Nancy G. Edmunds
> United States District Judge

Dated: March 21, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 21, 2014, by electronic and/or ordinary mail.

> s/Johnetta M. Curry-Williams
> Case Manager
> Acting in the Absence of Carol A. Hemeyer