UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Christopher James Bailey,

        Plaintiff,

v.

Scoutware, LLC,

        Defendant.

                                      /

Case No. 12-10281

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SANCTIONS [101] GRANTING DEFENDANT'S MOTION TO COMPEL[107], DENYING DEFENDANT'S MOTION FOR COSTS [111], AND SETTING FINAL PRETRIAL AND TRIAL DATES**

    In this Michigan Whistleblower Protection Act and breach of contract case, Plaintiff Christopher Bailey alleges that Defendant Scoutware terminated him and breached its contract with him when it found out about a suit Plaintiff filed against his former employer, Fast Model.[1]

    On July 31, 2013, the Court denied Defendant's motion for summary judgment on the WPA claim.  (Dkt. 83.)  The Court found, viewing the evidence in a light most favorable to Plaintiff, that he had brought forth evidence to show that Defendant's termination was, at least in part, based on the Fast Model suit.  (*Id.*)

---

[1] In his Fast Model suit, Plaintiff alleged that his former employer Fast Model violated the Michigan Sales Representative Commissions Act, Michigan's procuring cause doctrine for post-termination commissions, promissory estoppel, breach of contract and quantum meruit, tortious interference against Fast Model and Ross Comerford, an employee, and intentional infliction of emotional distress against Fast Model and Ross Comerford.  (Dkt. 12, Pl.'s Resp. to Defs.' Mot. to Dismiss, Ex. 3.)

Throughout the case's progress, Plaintiff and Defendant have disputed the discovery of several text messages that occurred between a Fast Model employee, Ross Comerford, and Kate Cronin, Plaintiff's co-worker and mentor at Defendant.  These text messages occurred a day or two after Plaintiff's Fast Model deposition, in which he turned over his Scoutware contract and Fast Model first learned that Defendant was then employing Plaintiff.  Defendant has not produced the text messages, stating that it cannot recover the text messages.  During the hearing on the motion for summary judgment, on July 24, 2013, Defendant revealed that it had an expert examine Cronin's phone and that the expert could not recover the text messages or any voice messages on Cronin's phone.

On December 14, 2013, Plaintiff filed a motion to show cause for Defendant's failure to produce the requested missing text and voice messages.  (Dkt. 93.)  As relief, Plaintiff requested that the Court: (1) bar Defendant from arguing that it did not know of Plaintiff's lawsuit against Fast Model or that it did not know the specifics of that lawsuit; (2) give the jury an instruction that Defendant withheld the alleged forensic examination and gave false discovery responses because the information was damaging to their defense; and (3) force Defendant to turn over phones and information relating to expert analysis.  (*Id.*)

After holding oral argument on the motion on March 19, 2014, the Court ordered Defendant to produce Kate Cronin's cell phones so that Plaintiff's expert could examine the phones and create an expert report.  (Dkt. 93.)  Plaintiff also requested that the Court: (1) bar Defendant from arguing that it did not know of Plaintiff's lawsuit against Fast Model or that it did not know the specifics of that lawsuit; and (2) give the jury an instruction that Defendant withheld the alleged forensic examination and gave false discovery responses

because the information was damaging to their defense.  The Court denied these requests, finding that they were premature and too severe at that time.  (*Id.*)

Plaintiff now has filed a motion for spoliation sanctions.  (Dkt. 101.)  Plaintiff argues that the results of its expert's examination of Cronin's cell phones show that Defendant/Cronin intentionally deleted the five missing text messages and two voicemails. (Pl.'s Mot. at 6.)  Plaintiff requests again that the Court enter a default judgment against Defendant or, if the case goes to trial, give the jury an adverse instruction that they can infer that the texts negatively impacted Defendant's case.  (*Id.* at 18.)  Plaintiff also requests attorneys' fees and costs.  (*Id.* at 19.)

Defendant opposes Plaintiff's motion.  (Dkt. 109.)  Defendant has also filed two motions of its own.  Defendant first filed a motion to compel documents in connection with Plaintiff's expert witness.  (Dkt. 107.)  Defendant also, on June 9, 2014, filed a motion for costs for Plaintiff to pay for its expert's deposition.  (Dkt. 111.)

## I.    The Court denies without prejudice Plaintiff's motion for spoliation sanctions

Plaintiff requests, as sanctions, a default judgment or that the Court, at least, give an adverse inference instruction to the jury at trial.  Plaintiff also requests costs and attorneys' fees for this motion.  The Court will not award Plaintiff a default judgment.  The Court finds that that sanction is too severe.  The Court denies without prejudice Plaintiff's request for an adverse inference instruction.  The Court also denies Plaintiff's requests for fees and costs.

Plaintiff requests that the Court give a jury instruction resembling the following:

1.    The jury may/must presume that the text messages and voicemails were deleted because they were damaging to Defendant's case.

2.  Plaintiff does not need to prove that specifics of his lawsuit against Fast
    Model were discussed between Cronin and Comerford, nor does the
    jury need to find Cronin informed the decision-makers about Plaintiff's
    lawsuit against Fast Model.

3.  The jury must find that Plaintiff has proved that Cronin learned of
    Plaintiff's lawsuit against Fast Model, she caused an adverse
    employment action to take place, and one of the reasons for Plaintiff's
    termination was his protected activity.  The protected activity does not
    have to be the only reason, or even the main reason, but it does have
    to be one of the reasons that made a difference in Defendant's decision
    to terminate Plaintiff.

(Pl.'s Mot. at 18.)

In support of his motion, Plaintiff presents the testimony and report of his expert, Peter

Morgan, of Cyber Recovery Solutions, LLC.  Morgan examined Cronin's cell phones and

produced an examination report of his findings.  (Pl.'s Mot., Ex. 1.)

Plaintiff bases his argument that Cronin deleted relevant messages on her cell phone

on a "Usage Details Print Preview" from AT&T.  (Pl.'s Mot., Ex. 4.)  This usage report

arguably shows that between October 20 and October 22, 2011, Cronin and Comerford

corresponded by text message.  (*Id.*)  The usage report shows that Cronin texted

Comerford on October 20 at 1:48 p.m., that Comerford responded at 2:35 p.m, and that

Cronin texted again at 2:54 p.m.  (*Id.*)  The usage report then shows that Cronin texted

Comerford at 10:59 a.m. on October 22, 2011, and that Comerford responded at 5:41 p.m.

(*Id.*)

The usage report also shows that Comerford left voice mail messages for Cronin on

October 19, 2011, but the usage report shows that the elapsed time of each call was zero

seconds, which may indicate that Comerford called Cronin, but did not leave a message.

(Pl.'s Mot., Ex. 4.)

4

Morgan expressed his opinion that the five messages and two voicemails were manually deleted.  He explained the process by which he examined the phones and pointed out what he believed to be errors in Defendant's expert's opinion.  (Pl.'s Mot., Ex. 4.)  Morgan reasoned that the messages would have been on Cronin's phone, because the Apple iPhone operating system does not remove messages.  (*Id.*)  Morgan explained that the only way for a message to be removed is for someone to actively delete the message. (*Id.*)

Morgan stated that Cronin's iPhone 3Gs revealed that she and Comerford had exchanged fifty-four text messages between December 6, 2011 and January 19, 2012. (Pl.'s Mot., Ex. 4.)  He explained that "[a]ny text messages that occurred between the two prior to 12/6/11 had been deleted from the phone and were unrecoverable."  (*Id.*)

Morgan stated that "[a]ll of the text messages with the contact 'Chris Bailey' had been deleted from the phone, but were recovered partially."  (Pl.'s Mot., Ex 4.)  Morgan explained that he could not recover the dates or times of the messages and that some of the content was missing from some of the messages.  (*Id.*)  He gave an example.  He stated that he had received, as an exhibit, a screen shot of the text message screen of Cronin's phone. This screen shot showed that Cronin texted "I saw Chris B. sent an email today thru c2. What's the latest?"  Morgan said that he could not recover the text message from Cronin's phone, although the surrounding text messages were still on Cronin's phone.  (*Id.*)  Morgan reasoned that the message had been deleted, given that the pre and post messages were still intact on Cronin's cell phone.  (*Id.*)

Morgan also examined Cronin's iPhone 4.  (Pl.'s Mot., Ex. 1.)  Morgan explained that he did not recover any of the sought-after messages, since, if Cronin transferred the

information from her old phone to her new phone, the deleted messages would not have transferred. (*Id.*)

Morgan formed a conclusion regarding his analysis of Cronin's phone. He stated that "[t]he fact that there was such a large number of text messages still saved to the phone from numerous other individuals during the same time period in question in October, 2011, makes it highly likely that these text messages were specifically deleted from the phone by a user." (Pl.'s Mot., Ex 1.) He added, though, that there was "no way of determining when the messages were deleted, or who deleted them." (*Id.*) Morgan also stated, given that there were other text messages between Cronin and Comerford, the fact that others did not appear, that he formed the conclusion that Cronin intentionally deleted the messages. (*Id.*)

And as for the voice mail messages, Morgan concluded that "[t]he fact that so many other voice mail messages were still located on the phone, or were deleted and recoverable, during the time period of these voice mails in question makes it highly likely that the voice mails were specifically deleted from the phone by a user." (Pl.'s Mot.,Ex. 1.) Morgan added, though, "[t]here is no way to determine when the voice mails were deleted, or who deleted them." (*Id.*)

Defendant opposes Plaintiff's arguments at every level. Defendant argues that Plaintiff fails to prove the necessary elements of a spoliation claim. (Def.'S Resp. at 1.) Defendant argues that Plaintiff cannot prove that Cronin ever received any text messages or voice mails from Comerford. Defendant then argues that Plaintiff cannot establish when Cronin allegedly deleted the texts or voice mails and that Defendant/Cronin had a duty to preserve the messages, or even control over Cronin's phone. (*Id.*) Defendant then maintains that Plaintiff has not offered proof to show that the messages were relevant to

Plaintiff's claim.  (*Id.*)  And Defendant finally argues that Plaintiff has not offered proof to

show that Cronin or anyone destroyed the messages with a culpable state of mind.  (*Id.*)

"Spoliation is the intentional destruction of evidence that is presumed to be

unfavorable to the party responsible for its destruction."  *Ross v. Am. Red Cross*, 12-4312,

__F.App'x__, 2014 WL 289430, at *3 (6th Cir. Jan 27, 2014) (quotation marks and citation

omitted).  District courts have "inherent power to craft proper sanctions for spoliated

evidence."  *Id.* (quotation marks and citations omitted).  "Because failures to produce

relevant evidence fall along a continuum of fault--ranging from innocence through the

degrees of negligence to intentionality, the severity of a sanction may, depending on the

circumstances of the case, correspond to the party's fault."  *Id.* (quotation marks and

citations omitted).  District courts may dismiss a case, grant summary judgment, or instruct

a jury that it may infer a fact based on lost or destroyed evidence.  *Id.*  (citation omitted).

An adverse inference instruction "is appropriate if the [d]efendants knew the evidence

was relevant to some issue at trial and . . . [their culpable] conduct resulted in its loss or

destruction."  *Ross*, 2014 WL 289430, at *3 (quotation marks and citations omitted, second

insertion in *Ross.*).

The party seeking an adverse inference instruction based on evidence destruction

must establish (1) that the party having control over the evidence had an obligation to

preserve it at the time it was destroyed;[2] (2) that the records were destroyed with a culpable

---

[2]"An obligation to preserve may arise when a party should have known that the evidence
may be relevant to future litigation, but, if there was no notice of pending litigation, the
destruction of evidence does not point to consciousness of a weak case and intentional
destruction."  *Ross*, 2014 WL 289430, at *4 (citation omitted).  "The obligation element is
met where a defendant knows evidence might be relevant to future potential litigation." *Id.*
(citation and brackets removed).  *See also Silvestri v. General Motors Corp.*, 271 F.3d 583,

state of mind;[3] and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."[4]  *Ross*, 2014 WL 289430, at *4 (citation omitted).

At this time, the Court finds that ruling on an adverse inference instruction is still premature.  The Court acknowledges the parties' arguments and finds that credibility issues surround all the requirements that Plaintiff must establish to be entitled to an adverse inference instruction.  The Court is confident that it will be able, after the trial testimony, to determine what an appropriate instruction for the jury would be.

Here, credibility issues surround Cronin's testimony about whether she received any text messages and when she may have received them.  The Court finds that the AT&T usage log is enough evidence to suggest that Cronin and Comerford exchanged text

---

591 (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."  "If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence.") (citation omitted).

[3]A party can establish the culpable state of mind factor by "showing that the evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or *negligently*."  *Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 554 (6th Cir. 2010) (citation and quotation marks omitted, insertion in original, emphasis in original.)  The veracity of a defendant's stated reasons for destroyed evidence "is an issue of credibility."  *Id.* (citation omitted).

[4] *See Beaven*, 622 F.3d at 554-55 (holding that "[t]he district court also did not abuse its discretion in holding that the folder was relevant--that the Plaintiffs had made 'some showing indicating that the destroyed evidence would have been relevant to the contested issue' of who may have accessed the folder . . . such that 'a reasonable trier of fact could find that it would support that claim[.]'"  "[A] party seeking an adverse inference may rely on circumstantial evidence to suggest the contents of destroyed evidence.") (citation omitted, insertion in *Beaven*.).

messages, which Cronin or Comerford possibly deleted.  Credibility will be key in this case.

The Court DENIES WITHOUT PREJUDICE Plaintiff's motion.

## II.    Plaintiff must produce the communications between him and Morgan, for he is not a paralegal

Defendant has filed a motion to compel documents in connection with Plaintiff's expert witness, Peter Morgan.  (Dkt. 107.)  These documents relate to communications Plaintiff himself had with Morgan regarding Morgan's expert report.  Plaintiff initially objected to certain email chains, claiming privilege and the work product doctrine.  Plaintiff did not produce a handful of documents before Morgan's deposition.  After Morgan's deposition took place, and Defendant learned that Morgan had emails from Plaintiff, Plaintiff then produced additional, but not all, email correspondence.

Plaintiff argues that Defendant is not entitled to the documents it requests because Plaintiff has been acting as his own paralegal in this case and, consequently, the work product doctrine protects his communications with Morgan.  Plaintiff has supplied the Court with the documents Defendant seeks, so that the Court may conduct an in camera review.

Because the Court finds that Plaintiff is not a paralegal, the Court orders him to produce the documents, and therefore GRANTS Defendant's motion to compel.

On May 15, 2014, Defendant's counsel sent discovery requests to Plaintiff.  (Def.'s Mot. to Compel, Ex. A.)

On May 23, 2014, Defendant's counsel sent a notice of deposition for Morgan, scheduled for May 30, 2014 to Plaintiff.  (Def.'s Mot. to Compel, Ex. B.)  The notice included a statement that "the deponent must produce at his deposition all of the

documents and things within his possession, custody or control that are responsive to the requests set forth in Exhibit A."  (*Id.*)

Exhibit A, entitled "Document Rider," requested the following,

1.   Produce all documents requested in Defendant Scoutware LLC's Document Production Requests to Plaintiff Related to Expert Discovery, served upon Plaintiff on May 15, 2014, and all documents requested in any other discovery request served in this case which relates expert testimony or opinions.

2.   Produce all documents, data or electronically stored information created or reviewed by Peter Morgan after he rendered the expert report, which was attached as Exhibit 1 to Plaintiff's Motion for Spoliation Sanctions.

(*Id.*)

Exhibits F-H to Defendant's motion to compel show Defense counsel requesting the documents concerning Morgan and his report from Plaintiff's counsel that Defense counsel repeatedly alleges, in the emails, that Plaintiff's counsel allegedly assured Defense counsel that he would receive by May 23, 2014.

An email that Defense counsel sent to Plaintiff's counsel allegedly confirms a phone call the two had shows that Defense counsel was acting under the assumption that Plaintiff's counsel represented that he would produce responsive documents by May 23, 2014.  (Def.'s Mot. to Compel, Ex. G.)

On May 27, 2014, Defendant's counsel emailed Plaintiff's counsel.  (Pl.'s Resp. to Mot. for Costs, Ex. 6.)  In that email, Defendant's counsel stated that he had emailed Plaintiff's counsel three times to get Morgan's documents. (*Id.*) Defendant's counsel stated that Plaintiff's counsel had ignored the request three times.  (*Id.*)  Defendant's counsel pointed out that Morgan's deposition was less than seventy two hours away.  (*Id.*)

On the evening of May 27, 2014, Defendant's counsel reiterated the fact that he had

not received any documents responsive to Morgan's deposition. (Pl.'s Resp. to Def.'s Mot. for Costs, Ex. 7.)

At 11:15 a.m. Wednesday May 28, 2014, Defendant's counsel wrote an email confirming a phone call with Plaintiff's counsel. (Pl.'s Resp. to Def.'s Mot. for Costs, Ex. 7.) In this email, Defendant's counsel stated that Plaintiff's counsel assured him that Defendant would receive Morgan's documents in time for the deposition. (*Id.*) Defendant's counsel warned Plaintiff's counsel that "if the documents do not arrive this afternoon, the deposition will not proceed." (*Id.*)

Plaintiff represents that he received the responsive documents on Wednesday, May 28, at twelve a.m. (Pl.'s Resp. to Def.'s Mot. for Costs, Ex. 8.)

On May 28, 2014, Plaintiff's counsel sent Defendant's counsel an email. (Def.'s Mot. to Compel, Ex. C.) In the email, Plaintiff's counsel stated that he never "promised" to produce documents by May 23, 2014. (*Id.*) He explained that he never would have agreed to that request because Morgan was out of town until that date for a work conference. (*Id.*) He then argued that the Court allowed Defendant to depose Morgan, but that the Court was silent on the issue of discovery requests. (*Id.*) Plaintiff's counsel further argued that, under the Federal Rules, he had thirty days to respond to any discovery requests. (*Id.*)

Plaintiff's counsel, though, stated that, "out of the goodness of [his] heart," he was able to have Morgan comply with "as much of [Defendant's] requests as possible[.]" (Def.'s Mot. to Compel, Ex. C.)

Plaintiff's counsel pointed out that Defendant had Morgan's report since April 18, 2014 and "made no attempt to depose" Morgan until May 15, 2014. (Def.'s Mot. to Compel, Ex. C.)

11

Plaintiff's counsel ended his correspondence by objecting to the document request. (Def.'s Mot. to Compel, Ex. C.)  Plaintiff's counsel objected on the basis that the request attempted to request privileged communications and trial strategies.  (*Id.*)

On May 30, 2014, Defendant deposed Morgan.  At his deposition, Morgan stated that more messages between him and Plaintiff existed, and that it appeared that Plaintiff had not produced all of the communications.  (Def.'s Mot. to Compel, Ex. D, Morgan Dep. at 20.)

On June 3, 2014, Plaintiff's counsel emailed Defense counsel.  (Def.'s Mot. to Compel, Ex. E.)   In this email, Plaintiff's counsel served requests for production of documents on Defendant, requesting documents relating to Plaintiff's deposition of Saperstein, Defendant's expert witness. (*Id.*)  Plaintiff's counsel also informed Defendant's counsel that he could "find missing emails with Mr. Morgan [attached.]"  (*Id.*)

The missing emails that Plaintiff's counsel attached are messages between Plaintiff and Morgan.  (Def.'s Mot. to Compel, Ex. E.) These messages primarily show that Plaintiff is spurring Morgan's production of the expert report.  (*Id.*) In the exchanges, Plaintiff urges Morgan to complete the report, suggests highlighting certain portions of the report or clarifying/making certain sections more readable, and instructs Morgan as to what terms and phrases Morgan should look for.  (*Id.*)

Defendant argues that the June 2, 2014 production is still incomplete.  (Def.'s Mot. to Compel at 3.)  Defendant states that "there are missing attachments, missing text messages[,] and even missing e-mail pages."  (*Id.*)  Defendant also states that Plaintiff's counsel has refused to require Morgan to execute a certification of completeness for the discovery request.  (*Id.*)  Defendant argues that Plaintiff's counsel has deprived it of "a full,

fair and complete opportunity to examine [] Morgan at his deposition regarding the evolution

of his opinions and his prolific interaction with [] Plaintiff regarding these opinions." (*Id.* at

7.)   Defendant maintains that it is entitled to all communications between Plaintiff and

Morgan leading up to Morgan's expert deposition on May 30, 2014.  (*Id.* at 8.)  Defendant

explains that these communications are relevant to  Morgan's expert testimony regarding

the spoliation issue.  (*Id.*)  Defendant also states that the communications "may also show

Plaintiff's improper tampering with his own witness."  (*Id.*)

Defendant requests the following relief:

(1)   that the Court order Plaintiff to produce all of the Plaintiff/Morgan communications, including e-mails, text messages, notes, memos, and any similar materials that Plaintiff has not yet produced to Defendant, and to have Morgan certify the production's completeness.

(2)   in light of the June 3, 2014 production, the Court allow Defendant to complete Morgan's deposition regarding all of the communications with Plaintiff, including any communications that concern alternative analyses, testing methods, or approaches to the issues raised by the spoliation opinions that Morgan proffered.

(3)   if and when all remaining Plaintiff/Morgan communications are produced, that the Court permit Defendant to submit a supplementary statement to the Court regarding the pending spoliation motion in light of any new material.

(4)   award Defendant its reasonable expenses and attorneys' fees incurred in connection with this motion, and any and all further relief the Court finds warranted.

Plaintiff has the burden to prove that withheld discovery responses are privileged. *See*

*Everlight Elec. Co. v. Nichia Corp.*, 12-11758, 2013 WL 5754896, at *6 (E.D.Mich. Oct. 23,

2013) (Drain, J.) "(A party resisting discovery based on the attorney-client privilege has the

burden of showing that the privilege applies.") (citation omitted); *and see William Beaumont*

*Hosp. v. Metronic, Inc.*, 09-11941, 2010 WL 2534207, at *7 (E.D.Mich. June 18, 2010)

(Cleland, J.) (stating that he same burden applies to the party resisting discovery based on the work product doctrine.) (citation omitted).

Defendant argues that no privilege protects the communications between Plaintiff himself and Morgan.  Federal Rule of Civil Procedure 24(b)(4)(C) governs this inquiry.  It protects communications between an attorney and an expert to a limited extent.   R u l e 26(b)(4)(C)--"Trial Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses," provides:

> Rule 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

As the Rule shows on its face, and the advisory committee's notes reveal, the communication protection immunizes only communications between the expert and the attorney.[5]   And the communication protected is further limited--it does not protect

---

[5]"[D]iscovery is permitted to identify facts or data the party's  attorney provided to the expert and that the expert considered in forming the opinions to be expressed.  The exception applies only to communications 'identifying' the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected." Fed. R.Civ. P. 26 advisory committee's notes to 2010 amendments.

"[D]iscovery regarding attorney-expert communications is permitted to identify any assumptions that counsel provided to the expert and that the expert relied upon in forming the opinions to be expressed.  For example, the party's attorney may tell the expert to assume the truth of certain testimony or evidence, or the correctness of another expert's conclusions.  This exception is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed.  More general attorney-expert discussions about hypotheticals, or exploring possibilities based on hypothetical facts, are outside this exception."   Fed. R.Civ. P. 26 advisory committee's notes to 2010 amendments.

underlying facts. *See Fialkowski v. Perry*, 11-5139, 2012 WL 2527020 (E.D.Pa. June 29, 2012) (compelling the plaintiff to produce materials that she created at her attorney's behest for an expert because the expert used the materials in forming his opinion; and thus holding that the materials fells within Rule 26(b)(4)(C)'s exception.).

Here, Plaintiff argues that he has been acting as his own paralegal and therefore the work product doctrine protects his communications with Morgan from discovery. *See Fine v. Facet Aerospace Prods. Co.*, 133 F.R.D. 439, 445 (S.D.N.Y. 1990) ("[T]he work product of a paralegal is subject to Rule 26(b)(3), whether the paralegal is viewed as an extension fo the attorney or as another representative of the party itself.") (citations omitted).

At the hearing on June 18, 2014, the Court inquired whether Plaintiff was actually a paralegal. Plaintiff is not a paralegal. The Court therefore finds, and stated on the record, that Plaintiff must produce the emails and text messages between Plaintiff and Morgan. The Court orders Plaintiff to do so within seven days of this order. The Court finds no other relief warranted at this time.

The Court therefore GRANTS Defendant's motion to compel.

## III. The Court denies Defendant's motion for costs for Jerry Saperstein's deposition

Defendant has filed a motion for Plaintiff to pay the costs of Defendant's expert's deposition, which Defendant alleges that Plaintiff noticed, then subsequently cancelled. (Dkt. 111.)

On May 28, 2014, Plaintiff noticed Jerry Saperstein's deposition for June 9, 2014. (Def.'s Mot. for Costs, Ex. B.)

On June 3, 2014, Plaintiff's counsel served requests for production of documents as to Defendant's expert witness.  (Def.'s Mot. for Costs, Ex. C.)

On June 6, 2014, Plaintiff's counsel emailed Defense counsel and stated:

> Since I have not heard from you about the Notice of Deposition for Jerry Saperstein that I emailed you on May 28, 2014[,] nor have I received anything on my document request for Mr. Saperstein sent on June 3, 2014.
>
> Based on the above[,] I am cancelling the Deposition I noticed for Monday June 9, 2014.

(Def.'s Mot. for Costs, Ex. D.)

Defense counsel then apparently called Plaintiff's counsel.  (Def.'s Mot. for Costs, Ex. D.)  Defense counsel followed the call up with an email.  (*Id.*)  In the email, Defense counsel summarized the call.  (*Id.*)  He said that he had already sent Saperstein's report to Plaintiff as well as all the exhibits to his report.  (*Id.*) Defense counsel explained that Saperstein's report also contained a list of the documents he reviewed and relied upon.  (*Id.*)  Defense counsel also said that he informed Plaintiff's counsel that he would provide Plaintiff's counsel, again, with a list of the information that Saperstein used to prepare his report.  (*Id.*) Defense counsel reiterated that Saperstein had changed his schedule to make himself available for his deposition on June 9, 2014.  (*Id.*)  Defense counsel expressed displeasure with Plaintiff's cancelling the deposition.  (*Id.*)  Defense counsel stated that Saperstein had lost other business opportunities and that Defendant would request that Plaintiff pay a reasonable amount for Saperstein's time.  (*Id.*)  Defense counsel said that he would continue to produce Saperstein for deposition.  (*Id.*)

Plaintiff's counsel did not show up for the deposition.  (Def.'s Mot. for Costs, Ex. G.)

Defendant seeks $1,400.00 for Saperstein's time and transportation and $255.64 in

court reporter fees related to the deposition.  (Def.'s Mot. for Costs, Ex. H.)  Defendant also seeks $400.00 for its attorney's time at the deposition, one hour; and $1,200.00 for the three hours its counsel spent preparing the pending motion.  (*Id.*)

Plaintiff argues that he cancelled the deposition for several reasons.  (Pl.'s Resp. to Def.'s Mot. to Compel at 4.)  He first argues that he cancelled the deposition because Defendant's counsel had not contacted him or acknowledged Plaintiff's notice of deposition of Saperstein.  (*Id.*)  He also argues, after reading Saperstein's expert report, that Plaintiff's counsel had no need to depose Saperstein because the report is "nothing but 'hunches' that try to explain why ' maybe' the messages don't exist[.]"  (*Id.* at 7.)  Plaintiff argues that Saperstein's report was not created with first hand knowledge and that Plaintiff could not learn anything from him.  (*Id.*)

The Court denies Defendant's motion for costs.  The parties are not getting along, that much is clear.  But, the Court finds that Defendant's failure to respond to the notice of deposition in conjunction with Plaintiff's notifying Defendant seventy-two hours in advance that he was cancelling the deposition, does not entitle Defendant to costs.

The Court therefore DENIES Defendant's motion for costs.

## IV.   Conclusion

For the above-stated reasons, the Court denies without prejudice Plaintiff's motion for spoliation sanctions, grants Defendant's motion to compel, and denies Defendant's motion for costs.

At the hearing, the Court also set the following dates:

Final Pretrial Conference:      July 24, 2014;

Trial:                                      August 5, 2014.

So ordered.

<u>s/Nancy G. Edmunds</u>
Nancy G. Edmunds
United States District Judge

Dated:  June 23, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record
on June 23, 2014, by electronic and/or ordinary mail.

<u>s/Carol J. Bethel</u>
Case Manager